UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


BENNY HERNANDEZ

VERSUS

:

ASAP EMPLOYMENT SERVICES, INC.
lOUISIANA CONSTRUCTION AND
INDUSTRIES SELF INSURERS FUND
AND XCEL ERECTORS INC. AND
SPX COOLING TECH. INC. AND
CFI Industries INC

EEOC DOCKET NO:  461-2016-01842
EEOC DOCKET NO:  461-2017-00108
EEOC DOCKET NO:  461-2017-00130


17-6892

SECT. I   MAG. 4

-------------------------------------------------------------------------------------------------

1.   NOW INTO COURT, comes plantiff BENNY HERNANDEZ who is asking the
Honorable court, who has jurisdiction  over fedreal charges for the EEOC. The right to sue letter
explians against defendant, Asap Employment services and Louisiana Construction and
Industries Self Insurers Fund.


-------------------------------------------------------------------------------------------------


2.  This company employed me and sent me to work at CFI Industries in
Donaldsonville Louisiana in which I worked for Xcel Erector at the plant. On 09-16-2014 they
had an operator hurt me with aload on a forklift. They never paid me any benefits and 13
months later at the Houma Louisiana worksmancomp medation told my parents and I to go
ahead and have surgery. Months after surgery they came at me that I had done something
wrong by not disclosing my disability and time of employment and time of injury. They then
took away my settlement and any benefits for they never paid any bills leaving at this monent
with 500,000.00 in medical bills to repay insurance. By the time I learned they had no rights in
taking this away legally and that the surgery did not go right, as another is soon to take place
they laughed and said to late your wrong and we hold all rights. They have left me in this
conditioin where I can not work for the rest of my life and no earnings. The EEOC was
investigating this and said this companies would never respond to given them the reason or
evidence to reslove this. So I asked for the right to sue letters and excliamed I would file them
since the companies would not help.Under 1964 American with Disability Act under the ADA or
EEOC one does not have to disclose such and does not give any reason to take away any
settlement.The attorney who handled this Danny Vidrine wrote a Summary to Mediation as to
what the company had said or done. This is noted his email of  summary of mediaiton and with
the discrimination right to sue letter to proof such. For now would ask the court that this
document can be amended and any documents that relate can and should please be viewed for

1

this is discrimination taking away a settlement in which I have been left 100 percent disabled for work and all future activities and earnings. There is documents that I Benny Hernandez are attaching for 2 and a half years later they started admitting that it was their fault the accident and that it did happened. The document has 6 pages and are from case # 16-05792 from state of Louisiana in Houma. Their is also Summary of Medaition and pics copied for at hearing will present originals.

Under the ADA an individual has a disability for such as HIV and under the employment section of the rules. The employer inquire into an applicant's or employee's HIV status? The ADA requires that medical infromation be kept confidential and the employee may be entitled to the job or promotion he or she was denied, a reasonable accommodation that was denied, back pay, benefits, or other damages. There is also discription of discrimination if one looks at the ADA rules on the ADA website or call them. This rules apply to US State and local governments from discrimination against persons with disabilities, such complaints the Department of Justice may seek injunctive relief to correct their practices or montery damages. (Example 10/02/06 - Discharged by Mr. john Soto, Production Supervisor)

-------------------------------------------------------------------------------------------------------------

3. I lost my schooling in which I was suppose to be receiving and all earning then and for the rest of my life. I lost 3 dics and they fused my lumbar in which a 10 inch surgery incision was cut into my back. I lost my self for they hiding this gave me mental and depression for life to turn around and then say it did happened. I lost any enjoyment I will ever have. I have been discriminated and abused for they took away my settlement.

-------------------------------------------------------------------------------------------------------------

4. The companies 3 involded for I worked for all 3 at this job site at one time all played part into treating and abuseing me this way. I want all that I have lost and plus for the way they handled my life. An apology would mean the world to my family and myself.

But yes due to condition that they left me in without paying bills or helping with any surgery or medicine, I ask for money.

Benny Hernandez 7/19/17

Benny W. Heranadez
141 REEVES RD.
MARION, LA 71260
(318)737-6255

2

---

ORDER

_____

HONORABLE JUDGE OF FEDERAL COURT

PLEASE SERVE:
ALL PARTIES:

SPX COOLING TECH
3867 PLAZA TOWER DR.
BATON ROUGE, LA 70816

Louisiana Construction and
Self Insurance Fund
1123 North Causeway Blvd.
Mandeville, LA 70471

ASAP EMPLOYMENT SERVICES, INC
2821 RICHLAND AVENUE
METAIRIE, LA 70002

CFI Industries
39018 Highway 3089
Donaldsonville, LA 70346

XCEL ERECTORS, INC
3867 PLAZA TOWER DR.
BATON ROUGE, LA 70816

_____

____

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Benny W. Hernandez<br>141 Reeves Road<br>Marion, LA 71260 | From: New Orleans Field Office<br>Hale Boggs Federal Building<br>500 Poydras Street, Room 809<br>New Orleans, LA 70130 |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 461-2016-01842 | Ligita D. Landry,<br>Supervisory Investigator | (504) 595-2876 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| X | More than 180 days have passed since the filing of this charge. |
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| X | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

Keith T. Hill,
Director

MAY 1 0 2017

*(Date Mailed)*

Enclosures(s)

cc: Danell M. Veade
Human Resources Director
ASAP EMPLOYMENT SERVICES
2821 Richland Ave., Suite 202
Metairie, LA 70002

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within
90 days</u> of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than <u>2 years (3 years)</u>** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u>** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 461-2016-01842 |

Louisiana Commission On Human Rights and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Benny W. Hernandez | (318) 982-7030 | 1976 |

| Street Address | City, State and ZIP Code |
|---|---|
| 141 Reeves Road, Marion, LA 71260 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| ASAP EMPLOYMENT SERVICES, INC | Unknown 15+ | (504) 814-9999 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2821 Richland Avenue,  Metairie, LA 70002 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)* ..

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 04-19-2016 | 04-19-2016 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

My employment as a Carpenter/Helper began July 1, 2014. In September 2014 I suffered an on the job injury at another location. I was unable to work. I filed for workers compensation. In April 2016 my case was settled; however, I was denied a full settlement. My attorney agreed to the settlement. I am still unable to work. The company employs more than 15 persons.

The company stated that I was denied the full settlement amount because I failed to reveal my disability during the hiring process.

I believe I have been discriminated against because of my disability in violation of The Americans with Disabilities Act as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 12/6/16 _____  12/6/2016 *Benny Hernandez*  Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (11/09).

2. AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  Benny W. Hernandez
141 Reeves Road
Marion, LA 71260

From:  New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Room 809
New Orleans, LA 70130

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 461-2017-00130 | Ligita D. Landry, Supervisory Investigator | (504) 595-2876 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** WITHIN 90 DAYS **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Keith T. Hill,
Director

MAY 1 0 2017

(Date Mailed)

Enclosures(s)

cc:    Kirsten Shoshone
HR Manager
SPX COOLING TECHNOLOGIES
7401 West 129th Street
Overland Park, KS 66213

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS     --     **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 461-2017-00130 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Benny W. Hernandez | (318) 982-7030 | 1976 |

| Street Address | City, State and ZIP Code |
|---|---|
| 141 Reeves Road, Marion, LA 71260 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| SPX COOLING TECH INC. | Unknown 15 plus | (913) 664-7406 |

| Street Address | City, State and ZIP Code |
|---|---|
| Highway 3089, Donaldsonville, LA 70346 | |

3867 Plaza Tower Dr. Baton Rouge La 70816

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 04-19-2016   Latest: 04-19-2016
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

My employment as a Carpenter began July 1, 2014. In September 2014 I suffered an on the job injury at another location. I was unable to work. I filed for workers compensation. In April 2016 my case was settled; however, I was denied a full settlement. My attorney agreed to the settlement. I am still unable to work. The company employs more than 15 persons.

The company stated that I was denied the full settlement amount because I failed to reveal my disability during the hiring process.

I believe I have been discriminated against because of my disability in violation of The Americans with Disabilities Act as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 12/6/2016           Benny Hernandez  Date           Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.    AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Benny W. Hernandez<br>141 Reeves Road<br>Marion, LA 71260 | From: New Orleans Field Office<br>Hale Boggs Federal Building<br>500 Poydras Street, Room 809<br>New Orleans, LA 70130 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 461-2017-00108 | Ligita D. Landry,<br>Supervisory Investigator | (504) 595-2876 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____     MAY 1 0 2017

Keith T. Hill,                                    (Date Mailed)
Director

Enclosures(s)

cc:     Lisa D. Hanchey
        Attorney
        Ogletree Deakins
        603 Silverstone Road, Suite 102A
        Lafayette, LA 70508

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA<br>☒ EEOC | 461-2017-00108 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Benny W. Hernandez | (318) 982-7030 | 1976 |

| Street Address | City, State and ZIP Code |
|---|---|
| 141 Reeves Road, Marion, LA 71260 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| EXCEL CONTRACTORS, INC.   *XCEL   Ereators Ink* | 15 - 100 300 | (225) 408-1300 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8641 United Plaza Blvd., Baton Rouge, LA 70809<br>*3867   Plaza Tower Dr.  Baton Rouge  La  70816* | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 04-19-2016 | 04-19-2016 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

My employment as a Carpenter began July 1, 2014. In September 2014 I suffered an on the job injury at another location. I was unable to work. I filed for workers compensation. In April 2016 my case was settled; however, I was denied a full settlement. My attorney agreed to the settlement. I am still unable to work. The company employs more than 15 persons.

The company stated that I was denied the full settlement amount because I failed to reveal my disability during the hiring process.

I believe I have been discriminated against because of my disability in violation of The Americans with Disabilities Act as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *12/6/2016*   *Benny Hernandez*<br>Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

BENNY HERNANDEZ                    *        DOCKET NO. 16-05792
                                            DISTRICT: 09

VERSUS                            *        OFFICE OF WORKER'S
                                            COMPENSATION

ASAP EMPLOYMENT SERVICES,          *        STATE OF LOUISIANA
INC., LOUISIANA CONSTRUCTION
& INDUSTRY, CF INDUSTRIES AND
EXCEL FAB

## ANSWER

COMES NOW, XCEL ERECTORS, INC., defendant in the above captioned matter, who, without waiving any exceptions or defenses, respectfully shows as follows:

1.

Defendant admits that the claimant was involved in an accident on or about the date set forth in the claim for compensation.

2.

Defendant admits that the claimant was in the employ of XCEL ERECTORS on the date of the alleged injury or occupational disease.

3.

Defendant admits that the employee was performing services arising out of and in the course and scope of his employment at the time of his alleged injury or occupational disease.

4.

Defendant denies that compensation has been paid.

5.

Defendant denies that the employee's average weekly wage, as set forth in the claim for compensation, is correct.

1

6.

Defendant denies that the claimant was temporarily totally disabled for the period stated in the claim for compensation.

7.

Defendant denies that the claimant is permanently disabled to the extent and for the period stated in the claim for compensation.

8.

Defendant denies that the claimant sustained an injury resulting in a loss of earning capacity as stated in the claim for compensation.

9.

Defendant denies that rehabilitation services were offered and refused.

10.

Defendant denies that rehabilitation services were requested, but not provided.

11.

At the time of the alleged injury or occupational disease, workers' compensation insurance was provided by Louisiana Construction and Industry Self-Insurers Fund (LCI Workers' Comp).

12.

Defendant denies that plaintiff has sustained any loss of wage-earning capacity as set forth in form LDOL-WC-1008, and affirmatively asserts a credit for any wages earned or wages capable of being earned by plaintiff.

13.

Defendant affirmatively asserts all rights to deny or limit its liability for payments for medical expenses pursuant to LSA-R.S. 23:1142, 23:1205 and 23:1212.

2

14.

In the alternative, if defendant is found liable for payment of medical expenses, defendants' liability is limited to the amounts allowed under the Utilization Review guidelines and the Reimbursement Schedule.

15.

Defendant also asserts any rights it may have to a reduction of benefits under LSA-R.S. 23:1206 (voluntary payments of unearned wages).

16.

Defendant disputes that it acted in an arbitrary and capricious manner at any time and/or that plaintiff is entitled to penalties and attorney's fees.

17.

Defendant is entitled to a reimbursement, offset and/or credit in the amount of any overpaid benefits that might have been paid in excess of the amount to which plaintiff was entitled.

18.

In further answering, defendant asserts all rights to reduce benefits as provided in La. R.S. 23:1225, which includes, but is not limited to, the social security offset for disability benefits and old age insurance benefits, benefits under disability benefits plans funded by the employer, unemployment compensation benefits, and the receipt of any other workers' compensation benefits.

19.

To the extent plaintiff has made any additional allegations or contentions not specifically responded to in this pleading, the same are denied out of an abundance of caution by defendant.

20.

Plaintiff's claims against XCEL ERECTORS, INC. are barred by La. C.C. art 1803, *et seq.*

3

La. C.C. art. 1803 provides:

> "Remission of debt by the obligee in favor of the obligor, or a transaction of compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the porter of that obligor."

La. R.S. 23:1063(A) provides that ASAP's virile portion of the solidary obligation owed to plaintiff by ASAP and XCEL ERECTORS, INC. is 100%:

> "A principal contractor, when sued by an employee of a subcontractor or his dependent, may call that contractor, or any intermediate contractor or contractors, as a co-defendant, and the principal contractor shall be entitled to indemnity from his subcontractor for compensation payments paid by the principal contractor on account of an accidental injury to the employee of the subcontractor."

As plaintiff's settlement with ASAP deprives XCEL ERECTORS, INC. of its indemnification claim against ASAP, plaintiff's release of ASAP benefits XCEL ERECTORS, INC. to this extent that such contribution or indemnity claim was impaired. See, *Farber v. Casualty Reciprocal Exchange*, 2000-076 (La. 7/6/00), 765 So.2d 994.

21.

In the alternative, plaintiff's claim should be reduced by 50%.

WHEREFORE, DEFENDANT, XCEL ERECTORS, INC., PRAYS that this answer be deemed good and sufficient and that, after due proceedings, there be judgment herein in favor of XCEL ERECTORS, INC. dismissing the claims of plaintiff with prejudice and at plaintiff's costs.

DEFENDANT, XCEL ERECTORS, INC., FURTHER PRAYS, in the alternative, that they be granted all offsets and credits to which they are entitled under the law, including, but not limited to, the offsets provided by La. R.S. 23:1206, 23:1212, 23:1205 and La. R.S. 23:1225 and any wages which the plaintiff has earned since the alleged accident or any wages the plaintiff is shown to be capable of earning since the accident.

4

DEFENDANT, XCEL ERECTORS, INC., FURTHER PRAYS that plaintiff's claims against XCEL ERECTORS, INC. be dismissed as said claims are barred by La. C.C. art 1803, *et seq.* and, in the alternative, that plaintiff's claim should be reduced by 50%.

DEFENDANT, XCEL ERECTORS, INC., FURTHER PRAYS for any and all orders necessary for general and equitable relief.

Respectfully submitted,

PETTIETTE, ARMAND, DUNKELMAN, WOODLEY BYRD & CROMWELL, L.L.P.

BY: _____

Robert A. Dunkelman, No. 18189

400 Texas Street, Suite 400 (71101)
P. O. Box 1786
Shreveport, Louisiana 71166-1786
Phone: (318) 221-1800
Fax:    (318) 226-0390
E-Mail: rdunkelman@padwbc.com

ATTORNEYS FOR XCEL ERECTORS, INC.

5

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing Answer has been forwarded to

Benny Hernandez
141 Reeves Road
Marion, LA  71260
Plaintiff – In Proper Person

Jeffrey Clayman
Attorney at Law
365 Canal Street
Suite 2000
New Orleans, LA  70130
Attorney for CF Industries

by placing same in the United States Mail, with adequate postage prepaid thereon.

Shreveport, Louisiana, this ___ day of _____, 2017.

_____
OF COUNSEL

6

In my back because of the accident at plant and they are hiding it.

§1272. Approval of lump sum or compromise settlements by the workers' compensation judge

A. A lump sum or compromise settlement entered into by the parties under R.S. 23:1271 shall be presented to the workers' compensation judge for approval through a petition signed by all parties and verified by the employee or his dependent, or by recitation of the terms of the settlement and acknowledgment by the parties in open court which is capable of being transcribed from the record of the proceeding.

B. When the employee or his dependent is represented by counsel, and if attached to the petition presented to the workers' compensation judge are affidavits of the employee or his dependent and of his counsel certifying each one of the following items: (1) the attorney has explained the rights of the employee or dependent and the consequences of entering into the settlement to him; and (2) that such employee or dependent understands his rights and the consequences of entering into the settlement, then the workers' compensation judge shall approve the settlement by order, and the order shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party.

C. When the employee or his dependent is not represented by counsel, the workers' compensation judge shall determine whether the employee or his dependent understands the terms and conditions of the proposed settlement, and shall approve it by order, unless he finds that it does not provide substantial justice to all parties, and the order shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party.

D. If a suit has been filed against a third party pursuant to the provisions of R.S. 23:1101, the district court hearing the third-party suit shall, in addition to a workers' compensation claim under the same conditions approve a lump sum or compromise settlement of the workers' compensation claim under the same conditions and terms set forth in this Section for approval of such settlements by a workers' compensation judge, and such authority shall include approval and establishment of the credit due the employer. The fees of the attorney representing the employee in the workers' compensation matter shall be approved by the district court judge.

E. All compensable medical expenses incurred prior to the date of the settlement shall be paid by the payor unless the terms of the settlement specifically provide otherwise.

Acts 1992, No. 769, §1; Acts 1995, No. 1137, §1, eff. June 29, 1995; Acts 1997, No. 88, §1, eff. June 11, 1997; Acts 1999, No. 776, §1; Acts 2001, No. 1014, §1, eff. June 27, 2001; Acts 2005, No. 257, §1.

If you experience any technical difficulties navigating this website, click here to contact the webmaster.
P.O. Box 94062 (900 North Third Street) Baton Rouge, Louisiana 70804-9062

http://www.legis.la.gov/Legis/Law.aspx?d=83466

*This is WHY* [handwritten annotation]

| | |
|---|---|
| Subject: | Summary of Mediation |
| From: | Danny Vidrine (dcvlaw@cox.net) |
| To: | safetycord262@yahoo.com; |

Date:        Monday, September 26, 2016 8:36 PM

Benny,

During the April 4, 2016 (you were a NO SHOW) mediation, Mr. Nathan Schrantz and an adjuster were present along with the mediator. The mediation took place at Dist 9, OWC-Houma, La.

During the mediation, the adjuster (I don't recall his name) stated that he was going to file a fraud claim against you due to the fact that you failed to disclose to your doctors and employer (ASAP) that you had HIV at time of employment and at time of injury. The adjuster stated that he felt the medical treatment was prolonged, more expensive and more difficult due to your non-disclosure of HIV.

During the entire litigation, Mr. Schrantz never mentioned the HIV issue in any pleading or any conversation I had with him. The adjuster, and ONLY the adjuster made an issue of this. I explained to you that the adjuster is the person who controls what the lawyer does in these situations and that I felt it was the adjuster and NOT Nathan Schrantz who was making an issue of the HIV situation. I further explained to you that the adjuster is really the person "pulling the strings" on most litigation strategies.

The final offer was $25K. The adjuster stated that if you did NOT accept the $25K (with waiver of subrogation in 3rd party suit), he would file a 1008 (after trial) and allege the fraud and seek all funds back from you as well as attorney fees.

This "deal" and all of what transpired during the mediation was presented to you via phone....On April 7, 2016, you advised you would accept the $25K settlement.

Danny

*Danial C. Vidrine*

*Law Office of Danial C. Vidrine*

*12445 Parkvilla Ave.*

ASAP #461-2016-01842 [handwritten]
XEL #461-2017-00108 [handwritten]
SPX #461-2017-00130 [handwritten]

1

UNITED STATES DISTRICT COURT OF LOUISIANA
CIVIL ACTION

BENNY HERNANDEZ VS.
THE NORTH LOUISIANA
ORTHOPEDIC AND SPORTS
MEDICINE CLINIC AND
DR. JOSE FERRER M.D.

DOCKET NO: 17-2229
OUACHITA PARISH COURT
STATE OF LOUISIANA

## PETITION FOR PERSONAL INJURY DAMAGES

NOW INTO COURT comes BENNY HERNANDEZ, domiciled in
UNION PARISH, LOUISIANA,who submits that he is entitled to Judgment of this Court
for damages based on the following facts and causes of action: and has admendment to
documents already in production in which is a letter from Patient's Compensation Fund,
State of Louisiana, Division of Administration. In which :
Benny Hernandez vs. Jose Ferrer, et al
PCF File No.:2017-00685
File Date:7/3/2017
Dates of Alleged Malpractice: 10/29/2015 -7/8/2016

This and all proceeding are being entered into EEOC of New Orleans of
Louisiana charges yet pending.

Order

SERVE: Dr. Jose Ferrer M.D.
1501 Louisville Ave.
Monroe , La. 71201

Respectfully Submitted:

Benny Hernandez _Beny Hernadez_

SERVE: BENNY HERNANDEZ
141 REEVES R.D.
MARION, La. 71260

ORDER

_____

_____: JUDGE OF OUACHITA PARISH COURT

1

# Patient's Compensation Fund

State of Louisiana
Division of Administration



John Bel Edwards
Governor

Alicia Reynolds
P.O. BOX 3718
BATON ROUGE, LA 70821
(225) 342-5200
(866) 469-9555

Ken Schnauder, Executive Director
July 11, 2017

## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mr. Benny Hernandez
In Proper Person
141 Reeves Rd.
Marion, LA 71260

Re: Benny Hernandez vs. Jose Ferrer, et al
   PCF File No.: 2017-00685
   File Date: 7/3/2017
   Date(s) of Alleged Malpractice: 10/29/2015 - 7/8/2016

Dear Mr. Hernandez:

This will acknowledge receipt of your request for a medical review panel on July 5, 2017. Based on the documents and information in possession of this office as of this date, the following providers are being reported as qualified for acts of medical malpractice under the provisions of R.S. 40:1231.8 et seq, for the above referenced claim:

**Jose L. Ferrer, M.D. - LAMMICO**
**Orthopaedic Clinic of Monroe, Inc. d/b/a North Louisiana Orthopaedic & Sports Medicine Clinic - LAMMICO**

The Oversight Board reserves the right to revise its qualification and coverage determination upon receipt of additional information.

In accordance with R.S. 40:1231.8(A)(1)(c) a filing fee of $100 per qualified defendant must be received by the Patient's Compensation Fund within 45 days of your receipt of this notice. Please remit <u>full</u> payment to the Patient's Compensation Fund in the amount of $200. This filing fee may only be waived upon receipt of an affidavit from a physician or a district court's in forma pauperis ruling as set forth in R.S. 40:1231.8(A)(1)(d). <u>Failure to comply shall render the request invalid and without effect as to all named health care providers including any previously qualified providers.</u> The request shall not suspend the time within which suit must be instituted.

Sincerely,

Susan Gremillion
Medical Malpractice Compliance Director

AR
cc: LAMMICO

U.S. Department of Justice
**Civil Rights Division**
*Disability Rights Section*



Link to PDF Version

## Questions and Answers:
## The Americans with Disabilities Act
## and Persons with HIV/AIDS

Introduction | Employment | Public Accommodations
State and Local Governments | Housing | Air Transportation | Resources

## I. Introduction

### What is the ADA?

The Americans with Disabilities Act (ADA) gives federal civil rights protections to individuals with disabilities similar to those provided to individuals on the basis of race, color, sex, national origin, age, and religion. It guarantees equal opportunity for individuals with disabilities in public accommodations, employment, transportation, State and local government services, and telecommunications.

### Are people living with HIV or AIDS protected by the ADA?

Yes. An individual has a "disability" under the ADA if he or she has a physical or mental impairment that substantially limits one or more major life activities, including major bodily functions such as the functions of the immune system; has a record of such an impairment; or has an actual or perceived mental or physical impairment that is not transitory and minor and is subjected to an action prohibited under the ADA. Persons with HIV, both symptomatic and asymptomatic, have physical impairments that substantially limit one or more major life activities or major bodily functions and are, therefore, protected by the law.

Persons who are discriminated against because they are regarded as having HIV are also protected. For example, a person who was fired on the basis of a rumor that he had AIDS, even if he did not, would be protected by the law.

Moreover, the ADA protects persons who are discriminated against because they have a known association or relationship with an individual who has HIV. For example, the ADA would protect a woman (who does not have HIV) who was denied a job because her roommate had AIDS.

---

**Information on filing a complaint with the Department of Justice can be found at www.ada.gov/aids. For more information on** how to send complaints to the Department **by mail, fax, or email.**


ada.gov/AIDS

## II. Employment

### What employers are covered by the ADA?

The ADA prohibits discrimination by all private employers with 15 or more employees. In addition, the ADA prohibits all public entities, regardless of the size of their work force, from discriminating in employment against qualified individuals with disabilities.

### What employment practices are covered by the ADA?

The ADA prohibits discrimination in all employment practices. This includes not only hiring and firing, but job application procedures (including the job interview), job assignment, training, and promotions. It also includes wages, benefits, leave, and all other employment-related activities. Examples of employment discrimination against persons with HIV or AIDS would include:

- An automobile manufacturing company that had a blanket policy of refusing to hire anyone with HIV or AIDS.

- An airline that extended an offer to a job applicant and then rescinded the offer after the employer discovered (during the post-offer physical) that the applicant had HIV.

- A restaurant that fired a waitress after learning that the waitress had HIV.

- A university that fired a physical education instructor after learning that the instructor's boyfriend had AIDS.

- A County tax assessment office that cancelled training opportunities for an accountant following her disclosure that she had HIV.

- A retail store that generally rotated all sales associates between the sales floor (where they could earn commissions) and the stock room (where they processed merchandise) except for the sales associate who was rumored to have HIV, who was never rotated to the floor.

- A call center employee who was denied a promotion to shift manager because his employer believed the employee would be unreliable since he had AIDS.

- A company that contracted with an insurance company that had a cap on health insurance benefits provided to employees for HIV-related complications, but not on other health insurance benefits.

### Who is protected by the employment provisions of the ADA?

The ADA prohibits employment discrimination against qualified individuals with disabilities. A "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

### What is an "essential function" of the job?

Essential functions of the job are those core duties that are the reason the job position exists. For example, an essential function of a typist's position is the ability to type; an essential function of a bus driver's position is the ability to drive.

Requiring the ability to perform "essential" functions assures that an individual with a disability will not be considered unqualified because of his or her inability to perform marginal or incidental job functions.

### What is a "reasonable accommodation"?

A "reasonable accommodation" is any modification or adjustment to a job, the job application process, or the work environment that will enable a qualified applicant or employee with a disability to participate in the application process, perform the essential functions of the job, or enjoy the benefits and privileges of employment. Examples of "reasonable accommodations" include: making existing facilities readily accessible to and usable by employees with disabilities; restructuring a job; modifying work schedules; acquiring or modifying equipment; and reassigning a current employee to a vacant position for which the individual is qualified. For example:

- An accountant with HIV who had no available sick leave required two hours off, monthly, for visits to his doctor. He was permitted to take longer lunch breaks and to make up the time by working later on those days.

- A supermarket check-out clerk with AIDS had difficulty standing for long periods of time. Her employer provided her with a stool so that she could sit down at the cash register when necessary.

- A secretary with AIDS needed to take rest breaks at irregular intervals during her work day. Her boss allowed her to take the breaks as needed throughout the day, so long as she completed her work before going home each evening.

- A machine operator required time off from work during his hospitalization with AIDS-related pneumonia. He had already used up all his sick leave. His employer allowed him to take leave without pay.

- A computer programmer with HIV had bouts of nausea caused by his medication. His employer allowed him to work at home on those days that he found it too difficult to come into the office for the month it took him to adjust to his medication.

- A newspaper editor with HIV who tired easily from walking began to use an electric scooter. His employer installed a ramp at the entrance to the building in which the editor worked so that the editor could use his scooter at the office.

## Does an employer have to provide a needed reasonable accommodation?

Once an employer determines that an accommodation is reasonable, it is required to provide it, unless the employer can demonstrate that the requested accommodation would impose an undue hardship on the operation of the business. If the requested accommodation would impose an undue hardship, the employer is not required to provide the accommodation. An undue hardship is an action that requires "significant difficulty or expense" in relation to the size of the employer, the resources available, and the nature of the operation. Determination as to whether a particular accommodation poses an undue hardship must be made on a case-by-case basis.

Customer or co-worker attitudes are not relevant factors in determining an undue hardship. The potential loss of customers or co-workers because an employee has HIV or AIDS does not constitute an undue hardship.

An employer is not required to provide an employee's first choice of accommodation. The employer is, however, required to provide an effective accommodation, *i.e.*, an accommodation that meets the individual's needs and will allow him or her to perform the essential functions of the job or enjoy the full benefits of employment.

## When is an employer required to make a reasonable accommodation?

An employer is only required to accommodate a "known" disability of a qualified applicant or employee. Thus, in most circumstances, it is the responsibility of the employee to request the reasonable accommodation. If the employee does not want to disclose that he or she has HIV or AIDS, it may be sufficient for the employee to say that he or she has an illness or disability covered by the ADA, that the illness or disability causes certain problems with work, and that the employee wants a reasonable accommodation. However, an employer can require medical documentation of the employee's disability

and the limitations resulting from that disability so disclosure may be necessary at some point during the interactive reasonable accommodation process.

## What if an employer has concerns about an applicant's ability to do the job in future?

Employers cannot fire or choose not to hire a qualified person now because they fear the worker will become too ill to work in the future. The hiring decision must be based on how well the individual can perform at the present time. In addition, employers cannot decide not to hire qualified people with HIV or AIDS because they are afraid of higher medical insurance costs, workers' compensation costs, or the potential for absenteeism.

## Can an employer consider health and safety when deciding whether to hire an applicant or retain an employee who has HIV or AIDS?

Yes, but only under limited circumstances. The ADA permits employers to establish qualification standards that will exclude individuals who pose a direct threat—*i.e.*, a significant risk of substantial harm—to the health or safety of the individual him/herself or to the safety of others, if that risk cannot be eliminated or reduced below the level of a "direct threat" by reasonable accommodation. However, an employer may not simply assume that a threat exists; the employer must establish through objective, medically-supportable methods that there is a significant risk that substantial harm could occur in the workplace. By requiring employers to make individualized judgments based on reliable medical or other objective evidence—rather than on generalizations, ignorance, fear, patronizing attitudes, or stereotypes—the ADA recognizes the need to balance the interests of people with disabilities against the legitimate interests of employers in maintaining a safe workplace.

Transmission of HIV will rarely be a legitimate "direct threat" issue. It is medically established that HIV can only be transmitted by sexual contact with an infected individual, exposure to infected blood or blood products, or perinatally from an infected mother to infant during pregnancy, birth, or breast feeding. HIV cannot be transmitted by casual contact. Thus, there is little possibility that HIV could ever be transmitted in the workplace. For example:

- A restaurant owner may believe that there is a risk of employing an individual with HIV as a cook, waiter or waitress, or dishwasher, because the employee might transmit HIV through the handling of food. However, HIV and AIDS are specifically not included on the Centers for Disease Control and Prevention (CDC) list of infectious and communicable diseases that are transmitted through the handling of food. Thus, no direct threat exists in this context.

- An employer may believe that an emergency medical technician ("EMT") with HIV may pose a risk to others when performing mouth-to-mouth resuscitation. However, the use of universal precautions among emergency responders means that the EMT will be using a barrier device while performing resuscitation.

Having HIV or AIDS, however, might impair an individual's ability to perform certain functions of a job, thus causing the individual to pose a direct threat to the health or safety of the individual or others. For example:

- A worker with HIV who operates heavy machinery and who has been experiencing unpredictable dizzy spells caused by a new medication he is taking might pose a direct threat to his or someone else's safety. If no reasonable accommodation is available (*e.g.*, an open position to which the employee could be reassigned), the employer would likely not violate the ADA if it removed the employee from the position until a physician certified that it was safe for the employee to return to the job.

As noted above, the direct threat assessment must be an individualized assessment. Any blanket exclusion—for example, refusing to hire persons with HIV or AIDS because of a perceived risk—would violate the ADA as a matter of law.

## When can an employer inquire into an applicant's or employee's HIV status?

An application cannot seek information about health status or ask disability-related questions. Likewise, an employer may not ask a job applicant disability-related questions or questions likely to solicit information about a disability or ask an applicant to submit to a medical examination before an offer is made. An employer may, however, ask the applicant questions during the interview about the applicant's ability to perform specific job functions.

An employer may condition a job offer on the satisfactory outcome of a post-offer medical examination or medical inquiry, if such medical examination or inquiry is required of all entering employees in the same job category. However, if the employer withdraws a job offer because the post-offer medical examination or inquiry reveals a disability, the reason(s) for not hiring must be job-related and consistent with business necessity. Having HIV alone can almost never be the basis for a refusal to hire after a post-offer medical examination.

After a person starts work, a medical examination or inquiry of an employee must be job-related and consistent with business necessity. Employers may conduct employee medical examinations where there is evidence of a job performance or safety problem, when examinations are required by other Federal laws, and/or when examinations are necessary to determine current "fitness" to perform a particular job. For example, an employer could not ask an employee who had recently lost a significant amount of weight, but whose job performance had not changed in any way, whether the employee had HIV or AIDS. An employer could, however, require an employee who was experiencing frequent dizzy spells, and whose work was suffering as a result, to undergo a medical examination.

### What obligations does an employer have if an employee discloses his or her HIV status?

The ADA requires that medical information be kept confidential. This information must be kept apart from general personnel files as a separate, confidential medical file available only under limited conditions.

### What obligations does an employer have to provide health insurance to employees with HIV or AIDS?

The ADA prohibits employers from discriminating on the basis of disability in the provision of health insurance to their employees and/or from entering into contracts with health insurance companies that discriminate on the basis of disability. Insurance distinctions that are not based on disability, however, and that are applied equally to all insured employees, do not discriminate on the basis of disability and do not violate the ADA.

Thus, for example, blanket pre-existing condition clauses that exclude from the coverage of a health insurance plan the treatment of all physical conditions that predate an individual's eligibility for benefits are not distinctions based on disability and do not violate the ADA. A pre-existing condition clause that excluded only the treatment of HIV-related conditions, however, is a disability-based distinction and would likely violate the ADA.

Similarly, a health insurance plan that capped benefits for the treatment of all physical conditions at $50,000 per year does not make disability-based distinctions and does not violate the ADA.

A plan that capped benefits for the treatment of all physical conditions, except HIV or AIDS, at $50,000 per year, and capped the treatment for AIDS-related conditions at $10,000 per year, does distinguish on the basis of disability and likely violates the ADA.

### What can an applicant or employee do if he or she believes that he or she is being discriminated against on the basis of his or her HIV or AIDS?

An applicant or employee who believes that he or she has been subjected to discrimination on the basis of having HIV or AIDS may file a charge with the nearest Equal Employment Opportunity Commission office. The charge must be filed within 180 days of when the discrimination occurred. The EEOC will investigate the charge and either act (on its own or through a referral of the charge to the appropriate government agency) to correct the problem or give the employee a "right to sue" letter. The right to sue

letter permits the employee to sue the employer directly. The employee may be entitled to the job or promotion he or she was denied, a reasonable accommodation that was denied, back pay, benefits, or other damages.

---

**For more information about the ADA's employment requirements, or to file a charge of discrimination, please call the EEOC at 800-669-4000 (Voice) or 800-669-6820 (TTY), or visit www.eeoc.gov/employees/charge.cfm.**

---

## III. Public Accommodations

### What is a public accommodation?

A public accommodation is a private entity that owns, operates, leases, or leases to a place of public accommodation. Places of public accommodation include a wide range of entities, such as restaurants, hotels, theaters, doctor's offices, dentist's offices, hospitals, retail stores, health clubs, museums, libraries, private schools, and day care centers.

Entities that meet the legal definition of a private club and those that qualify for an exemption for religious entities are not considered places of public accommodation.

### What constitutes discrimination?

Discrimination is the failure to give a person with a disability the equal opportunity to use or enjoy the public accommodation's goods, services, or facilities. Examples of ADA violations would include:

- A dentist who categorically refused to treat all persons with HIV or AIDS.

- A moving company that refused to move the belongings of a person who had AIDS, or that refused to move the belongings of a person whose neighbor had AIDS.

- A health club that charged extra fees to persons who had HIV, or that prohibited members with HIV from using the steam room or sauna, or that limited the hours during which members with HIV could use the club's facilities.

- A day care center that categorically refused admission to children with HIV or the children of mothers with HIV.

- A funeral home that refused to provide funeral services for a person who died from AIDS-related complications.

- A building owner who refused to lease space to a not-for-profit organization that provided services to persons with HIV or AIDS.

- A cosmetology school that refused to enroll a student once they learned that she had HIV.

- An overnight summer camp where children sleep in group cabins that requires a camper with HIV to sleep in the camp infirmary.

The ADA also requires public accommodations to take steps to ensure that persons with disabilities have equal access to their goods and services. For example, the ADA requires public accommodations to make reasonable changes in their policies, practices, and procedures; to provide communication aids and services; and to remove physical barriers to access when it is readily achievable to do so.

**What types of changes in policies, practices, or procedures would a public accommodation have to make to ensure equal access to persons with HIV or AIDS?**

Even though a public accommodation may not intend to discriminate against persons with HIV or AIDS, its customary way of doing business may unintentionally exclude persons with HIV or AIDS or provide them with lesser services. If reasonable modifications in the business policies, practices, or procedures would rectify the problem, the public accommodation would be required to make those changes unless doing so would fundamentally alter the nature of the goods, services, or facilities at issue. For example:

- A hotel does not allow pets. It would be a reasonable modification of the hotel's policy to allow a person who has lost his vision from cytomegalovirus retinitis, an AIDS-related illness, to have his service animal stay with him in the hotel.

- A pharmacy requires customers to stand in line to be served. A person with AIDS finds it too tiring to stand in line. It would be a reasonable modification of the pharmacy's procedures to allow the person to announce her presence and/or take a number and then sit down until her prescription is filled. It may also be a reasonable modification for the pharmacy to provide curbside service.

**Are health care providers required to treat all persons with HIV or AIDS, regardless of whether the treatment being sought is within the provider's area of expertise?**

No. A health care provider is not required to treat a person who is seeking or requires treatment or services outside the provider's area of expertise. However, a health care provider cannot refer a patient with HIV or AIDS to another provider simply because the patient has HIV or AIDS. The referral must be based on the fact that the treatment the patient is seeking is outside the expertise of the provider, not the patient's HIV status alone. For example:

- An individual with HIV has a severe allergic drug reaction while on vacation and goes to the nearest emergency room. The hospital routinely treats people experiencing allergic drug reactions. Sending the patient to another hospital that allegedly has an "AIDS unit" would violate the ADA.

- An individual with HIV is in a car accident and suffers severe third degree burns. He is taken to the nearest hospital, which does not have a burn unit. Sending the patient to another hospital that has a burn unit would not violate the ADA.

- A person with HIV goes to the dentist for a teeth cleaning. The dentist refers her to another dentist because the dentist claims he is "not equipped" to treat persons with HIV. Because there is no special equipment necessary for providing routine dental care to those with HIV or AIDS beyond universal precautions (for example, gloves, mask, and goggles) that a provider should use when treating all patients, this "referral" would violate the ADA.

- A person with HIV goes to a general dentist who determines that the patient requires periodontal surgery. The dentist tells the patient that he is not a periodontal surgeon and is, therefore, not qualified to perform her treatment. The dentist refers the patient to a periodontal surgeon for diagnosis and treatment, with the understanding that the patient will return to the dentist for the provision of routine dental care. This would not violate the ADA.

**What types of communication aids and services would a public accommodation be required to provide to persons with HIV or AIDS?**

A public accommodation is required to provide auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities, unless an undue burden (that is, significant difficulty or expense) or fundamental alteration would result. Thus, if a person with HIV or AIDS has an impairment—such as a vision, hearing, or speech impairment—that substantially limits his or her ability to communicate, the public accommodation must provide auxiliary aids or services that will ensure equal access to the goods, services, or facilities that the public accommodation offers. The impairment can be

one that the person has had from birth, or one that has recently developed as a result of an AIDS-related complication.

The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the length, importance, and complexity of the communication involved. Some examples of auxiliary aids and services (again, the effectiveness of which will be gauged based on the particular situation) are: exchanging written notes; typing back and forth on a computer; providing a qualified sign language interpreter; having a telecommunications device for the deaf (TTY) for customers with hearing impairments; reading aloud; providing large print, audiotapes, or Braille materials; locating merchandise for customers with vision impairments; and using TTYs or computer terminals for persons with speech impairments. For example:

- A person who was born deaf and uses American Sign Language as his primary means of communication goes to his physician to receive the results of his HIV test. The test results have come back positive. The physician may be required to obtain and pay for a sign language interpreter, as the communication between the physician and his patient is likely to be lengthy, important, and complex and may only be effective if a sign language interpreter is provided.

- A person with AIDS has recently lost his vision as a result of an AIDS-related complication. It would be appropriate for a restaurant waiter to read aloud the contents of the menu.

## Can a public accommodation charge for reasonable modifications in its policies, practices, or procedures, or for the provision of communication aids and services?

No. A public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs necessary to provide nondiscriminatory treatment. For example:

- A law firm routinely prepares wills and trusts. A woman with AIDS who recently has experienced vision loss requests that the firm draft her will and guardianship papers, and requests that the firm provide her with all drafts of her documents in large print. The law firm cannot charge the woman extra for preparing the documents in large print.

## Can a public accommodation exclude a person with HIV or AIDS because that person allegedly poses a direct threat to the health and safety of others?

In almost every instance, the answer to this question is no. Persons with HIV or AIDS will rarely, if ever, pose a direct threat in the public accommodations context.

A public accommodation may exclude an individual with a disability from participation in an activity if that individual's participation would result in a direct threat to the health or safety of others. "Direct threat," however, is defined as a "significant risk to the health or safety of others" that cannot be eliminated or reduced to an acceptable level by reasonable modifications to the public accommodation's policies, practices, or procedures, or by the provision of appropriate auxiliary aids or services. The determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability; it must be based on an individual assessment that considers the particular activity and the actual abilities and disabilities of the individual. The individual assessment must be based on reasonable judgment that relies on current medical evidence. For example:

- A restaurant's refusal to admit an individual with AIDS would violate the ADA, because HIV cannot be transmitted through the casual contact that occurs in a restaurant setting.

- A gynecologist's refusal to treat a woman with HIV would be a violation of the ADA. Health care providers are required to treat all persons as if they have HIV or other blood-borne pathogens, and must use universal precautions (gloves, mask, and/or gown where appropriate, *etc.*) to protect themselves from the transmission of infectious diseases. Failure to treat a person who discloses that she has HIV out of a fear of contracting HIV would be a violation of the ADA, because so long

as the physician utilizes universal precautions, it is generally safe to treat persons with HIV or AIDS.

• A day care center's refusal to admit a child with HIV is also a violation. Day care centers cannot exclude a child solely because he has HIV or AIDS. HIV cannot be easily transmitted during the types of incidental contact that take place in child care centers. Children with HIV or AIDS generally can be safely integrated into all activities of a child care program. Universal precautions, such as wearing latex gloves, should be used whenever caregivers come into contact with children's blood or bodily fluids, such as when they are cleansing and bandaging playground wounds. This applies to the care of all children, whether or not they are known to have disabilities.

• A health club's revocation of the membership of a person with HIV, because of the fear that the person may transmit the virus through the sweat he leaves on the club's weight machines, also violates the ADA. There is no evidence that HIV can be transmitted by sweat.

## What types of physical barriers to access is a public accommodation required to remove? Why is this important to persons with HIV or AIDS?

Persons with HIV or AIDS may find that they have less strength to open doors, or may tire more easily when walking or climbing stairs. They may use a wheelchair, electric scooter, or other device for mobility purposes. The ADA's barrier removal requirements address these situations.

The ADA requires that public accommodations remove all physical barriers to access in their existing facilities, where it is readily achievable to do so. "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

Examples of barrier removal may include installing ramps, making curb cuts in sidewalks and entrances, rearranging furniture, widening doors, installing accessible door hardware, and installing grab bars in toilet stalls. The obligation to engage in readily achievable barrier removal is a continuing one.

The ADA requires that all newly constructed places of public accommodation be readily accessible to and usable by individuals with disabilities. The ADA also requires that all alterations made to existing facilities be readily accessible to and usable by individuals with disabilities.

## What can a person do if he or she is being discriminated against by a place of public accommodation on the basis of his or her HIV status?

A person who believes that he or she is being discriminated against may file a complaint with the Department of Justice. Complaints may be directed to the Department of Justice at the address below.

The Department of Justice is authorized to investigate complaints and to bring lawsuits in cases of general public importance, or where there is a pattern or practice of discrimination. The Department may seek injunctive relief (such as having the public accommodation correct its discriminatory practices), monetary damages, and civil penalties. Due to resource limitations, the Department is unable to investigate every complaint that it receives.

Individuals are also entitled to bring private lawsuits against places of public accommodation. If a person files a private lawsuit, he or she may not seek monetary damages. However, the person may seek injunctive relief and reasonable attorney's fees and costs.

---

Information on filing a complaint with the Department of Justice

## IV. State and Local Governments

### Does the ADA also prohibit State and local governments from discriminating against persons with HIV or AIDS?

Yes. The ADA applies to all State and local governments, their departments and agencies, and any other instrumentalities or special purpose districts of State or local governments. For example:

- A public school system may not prohibit a child with HIV or AIDS from attending elementary school.

- A county hospital may not refuse to treat persons with HIV or AIDS.

- A local police station must make sure that TTY users, including persons with HIV or AIDS, can call 911 and other emergency phone numbers directly, without having to go through a relay system.

- A city emergency medical technician may not refuse to treat or transport a person with HIV or AIDS.

- A State-owned nursing home may not refuse to accept patients with HIV or AIDS.

- A county recreation center may not refuse admission to a summer camp program to a child whose brother has AIDS.

- A paratransit system may not refuse to transport an eligible rider to an appointment at a medical clinic because that clinic specializes in treatment of HIV and AIDS.

- A high school student does volunteer work at a local AIDS service organization and students at her school, thinking that she has HIV, harass her. Feeling threatened, she reports the harassment to a teacher. The harassment rises to a level where it denies or limits her ability to participate in or benefit from the school's education program. The school must take prompt and effective action to address the harassment.

State and local governments must also reasonably modify their policies, practices, and procedures , must provide auxiliary aids and services necessary for effective communication, and must make programs, services, and activities accessible.

### What can a person do if he or she is being discriminated against by a State or local government on the basis of his or her HIV status?

A person who believes he or she is being discriminated against by a State or local government may file a complaint with the Department of Justice. Complaints may be directed to the Department of Justice following the information below.

The Department of Justice is authorized to investigate complaints and to bring lawsuits to enforce the ADA. The Department may seek injunctive relief (such as having the State or local government correct its discriminatory practices) or monetary damages. Due to resource limitations, the Department is unable to investigate every complaint that it receives.

Individuals are also entitled to bring private ADA lawsuits against State and local governments and seek injunctive relief, monetary damages (in some instances), and reasonable attorney's fees and costs.

Information on filing a complaint with the Department of Justice

## V. Housing

### Does the ADA prohibit discrimination in the sale, rental, and other terms of housing?

Housing discrimination is not covered by the ADA. However, the Fair Housing Amendments Act of 1988, which is primarily enforced by the U.S. Department of Housing and Urban Development (HUD), prohibits housing discrimination against persons with disabilities, including persons with HIV or AIDS.

Housing discrimination is illegal in the sale or rental of a dwelling, including in apartments, houses, nursing homes, assisted living centers, and group homes, among other housing options.

**Persons who believe that they have been discriminated against in housing because of their HIV status may contact HUD at 1-800-669-9777 (Voice) or 1-800-927-9275 (TTY) or visit http://www.hud.gov/complaints/.**

## VI. Air Transportation

### Does the ADA prohibit discrimination by airlines?

Discrimination by air carriers in areas other than employment is not covered by the ADA, but rather, by the Air Carrier Access Act (ACAA).

**Persons who believe that they have been discriminated against by airlines because they have HIV may contact the U.S. Department of Transportation at 1-800-778-4838 (Voice) or 1-800-455-9880 (TTY) or visit airconsumer.ost.dot.gov/ACAAcomplaint.htm.**

## Resources

The **Department of Justice** offers technical assistance on the ADA as it applies to businesses, non-profit service agencies, and State and local government programs. To get answers to technical questions, obtain general ADA information, order free ADA materials, or ask about filing a complaint, please call: ADA Information Line for documents and questions: **800-514-0301 (Voice); 800-514-0383 (TTY); DOJ HIV/AIDS website:** www.ada.gov/AIDS

The **Equal Employment Opportunity Commission** offers technical assistance on ADA provisions applying to employment and also provides information on how to file ADA complaints: **800-669-4000 (Voice); 800-669-6820 (TTY);** www.eeoc.gov

The **Job Accommodation Network (JAN)** provides information and advice to employers and people with disabilities on reasonable accommodation in the workplace: **800-526-7234 (Voice); 877-781-9403 (TTY);** www.askjan.org

The **Department of Housing and Urban Development** takes complaints concerning housing-related discrimination: **800-669-9777 (Voice); 800-927-9275 (TTY);** www.hud.gov/complaints/

**CDC-INFO, the Center for Disease Control and Prevention's National Contact Center**, provides information on a wide variety of disease prevention and health promotion topics, including on HIV/AIDS. Representatives are available to answer questions in English and Spanish: **800-CDC-INFO (Voice)**; **888-232-6348 (TTY)**; www.cdc.gov/cdc-info/

**The U.S. Department of Transportation** responds to discrimination by air carriers in areas other than employment under the Air Carrier Access Act: **800-778-4838 (Voice)**; **800-455-9880 (TTY)**; airconsumer.ost.dot.gov/ACAAcomplaint.htm



**ADA Information Line**
800-514-0301 (Voice) and 800-514-0383 (TTY)
24 hours a day to order publications by mail.

M-W, F 9:30 a.m. – 5:30 p.m., Th 12:30 p.m. – 5:30 p.m. (Eastern Time)
to speak with an ADA Specialist. All calls are confidential.
For persons with disabilities, this publication is available in alternate formats.

**To file a complaint with the Department of Justice, go to** www.ada.gov/aids.
Complaints may be sent to the Department of Justice as follows:
By mail: US Department of Justice, 950 Pennsylvania Avenue, NW,
Disability Rights Section -- 1425 NYA, Washington, D.C. 20530
By fax: (202) 307-1197 | By email: ADA.complaint@usdoj.gov

Reproduction of this document is encouraged.                    June 2012

Return to ADA.gov/aids

ADA Home Page